**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com
- *additional counsel on signature page* -

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARAN POLAT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> REGULUS THERAPEUTICS INC., PAUL C. GRINT, and JOSEPH P. HAGAN, <br><br> Defendants. | Case No.  **'17 CV 0182 BTM RBB** <br><br> **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Baran Polat ("Plaintiff"), on behalf of himself and all other persons similarly situated, by his undersigned attorneys, alleges the following based upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and

Exchange Commission ("SEC") filings, wire and press releases published by and regarding Regulus Therapeutics Inc. ("Regulus" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Regulus securities between January 21, 2016 and June 27, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Regulus is a biopharmaceutical company that focuses on the discovery and development of drugs that target microRNAs to treat and prevent various diseases, including hepatitis C infections, cardiovascular, fibrosis, oncology, immune-inflammatory, and metabolic diseases.  One of its main clinical development products is RG-101, a GalNAc-conjugated anti-miR targeting miR-122 to treat patients with hepatitis C virus ("HCV") infection.

2

3.     Founded in 2007, Regulus is headquartered in San Diego, California.  The Company's shares trade on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "RGLS."

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) patients treated with RG-101 were at increased risk of contracting jaundice; (ii) consequently, the Company had overstated RG-101's approval prospects and/or commercial viability; and (iii) as a result of the foregoing, Regulus's public statements were materially false and misleading at all relevant times.

5.     On June 27, 2016, post-market, Regulus announced that it had received verbal notice from the U.S. Food and Drug Administration ("FDA") that the FDA had placed RG-101 on clinical hold after a second serious adverse event of jaundice was reported in a patient treated with the drug.

6.     On this news, Regulus's share price fell $2.47, or more than 49%, to close at $2.54 on June 28, 2016.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

3

### JURISDICTION AND VENUE

8.      The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is properly laid in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).   The acts and conduct complained of herein occurred in substantial part in this District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Regulus securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Regulus is incorporated in Delaware, and the Company's principal executive offices are located at 10614 Science Center Drive, San Diego,

4

California 92121.  Regulus's common stock trades on the NASDAQ under the ticker symbol "RGLS."

14.    Defendant Paul C. Grint ("Grint") has served as the Company's Chief Executive Officer ("CEO"), President and Director since June 2015.

15.    Defendant Joseph P. Hagan ("Hagan") has served as the Company's Principal Financial and Accounting Officer and Chief Operating Officer since January 2016.

16.    The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.    Regulus is a biopharmaceutical company that focuses on the discovery and development of drugs that target microRNAs to treat and prevent various diseases, including hepatitis C infections, cardiovascular, fibrosis, oncology, immune-inflammatory, and metabolic diseases.  One of its main clinical development products is RG-101, a GalNAc-conjugated anti-miR targeting miR-122 to treat patients with hepatitis C virus infection.

5

<u>**Materially False and Misleading Statements Issued During the Class Period**</u>

18.     The Class Period begins on January 21, 2016, when Regulus issued a press release titled "Regulus Completes RG-101 Enrollment in Phase II Combination Study." The news release stated, in relevant part:

> "Regulus begins 2016 with a multi-faceted clinical development plan for RG-101 in both Europe and the United States which we believe, if successful, will position our lead microRNA therapeutic well against the backdrop of the rapidly evolving HCV landscape," said Paul Grint, M.D., President and CEO of Regulus.  "Regulus aims to enhance the value of RG-101 by maturing its profile in combination with oral agents and in certain underserved patient populations and we look forward to reporting results from multiple studies throughout 2016."
>
> . . .
>
> **Enrollment Complete in Phase II Combination Study; Interim Results in mid-Feb**. Regulus announced today that patient enrollment is now complete in an ongoing Phase II study evaluating the combination of RG-101 with multiple approved DAAs.  Treatment-naïve patients chronically infected with genotypes 1 or 4 were randomized to one of three treatment arms (n=78).  Patients receive a single subcutaneous injection of 2 mg/kg of RG-101, followed by 28 days of once/daily DAAs Harvoni®, Olysio®, or Daklinza®, followed by an additional subcutaneous injection of 2 mg/kg of RG-101 on Day 29.  Regulus is planning to report interim results from this study in mid-February 2016 in time for submission for potential publication at the European Association for the Study of the Liver (EASL) annual meeting.  Primary endpoint results for sustained viral response data 12 weeks following conclusion of treatment (SVR12) are anticipated to be disclosed late in Q2 2016.

19.     On February 17, 2016, Regulus issued a press release titled "RG-101 Interim Analysis Shows 97% Response at 8 Week Follow-Up."  The news release stated, in relevant part:

> To date, RG-101 has been generally well tolerated with the majority of adverse events considered mild or moderate, and with no study discontinuations.  For those patients through 12 weeks of follow-up, 100% remained below the limit of quantification (14/14). The primary endpoint analysis (12 week follow up) for all 79 patients in the study are anticipated to be reported in late Q2 2016.
>
> …
>
> "These sustained virologic responses demonstrate the potential ability of RG-101 to successfully reduce currently marketed oral treatment regimens to just four weeks, a major clinical breakthrough that the HCV field has not been able to achieve until today and I look forward to future results," said Eric Lawitz, M.D., Vice President, Scientific and Research Development, The Texas Liver Institute, and Clinical Professor of Medicine, University of Texas Health Science Center in San Antonio.  "In addition, I believe this novel approach might allow treating physicians to overcome compliance issues in a wide variety of patient populations."
>
> "The potent antiviral activity and sustained, durable responses observed from this interim analysis, provide evidence that RG-101 may have clinical utility as a potential backbone agent in combination with oral therapies to treat a wide range of HCV patients," said Paul Grint, M.D., President and CEO of Regulus.  ***"Based on the results announced today, Regulus intends to accelerate development of RG-101 given its promising potential to shorten treatment regimens."***

(Emphasis added.)

7

20.     On February 23, 2016, Regulus filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K").   For the quarter, Regulus reported a net loss of $7.23 million, or $0.14 per diluted share, on revenue of $10.86 million, compared to a net loss of $22.17 million, or $0.47 per diluted share, on revenue of $4.22 million for the same period in the prior year.   For fiscal year 2015, Regulus reported a net loss of $55.75 million or $1.08 per diluted share, on revenue of $20.76 million, compared to a net loss of $ 56.68 million or $1.29 per diluted share, on revenue of $7.67 million for fiscal year 2014.

21.     In the 2015 10-K, Regulus stated in part:

**'Clinical Map Initiative' Goals**

To advance our *micro*RNA therapeutics pipeline and biomarkers platform over the next several years, we have outlined specific goals under our 'Clinical Map Initiative' strategy. We are developing RG-101, a GalNAc-conjugated anti-miR targeting miR-122, a host factor for the hepatitis C virus, or HCV, infection. In addition, we are developing RG-012, an anti-miR targeting *micro*RNA-21 for the treatment of Alport syndrome, a life-threatening kidney disease driven by genetic mutations with no approved therapy. We are also advancing several programs toward clinical development in areas such as oncology and fibrosis, both independently and with our strategic alliance partners AstraZeneca and Sanofi. Under our strategic alliance with AstraZeneca, AstraZeneca recently commenced clinical development of RG-125, a GalNAc-conjugated anti-miR targeting *micro*RNA-103/107 for the treatment of nonalcoholic steatohepatitis, or NASH, in patients with type 2 diabetes/pre-diabetes.

8

RG-101: In August 2015, we initiated a Phase II study investigating RG-101 designed to evaluate a shortened, four-week treatment regimen containing a subcutaneous administration of 2 mg/kg of RG-101 at Day 1 and Day 29, in combination with oral direct-acting antiviral agents Harvoni®, Olysio®, and Daklinza® for 28 days. In February, 2016, we announced interim results from the clinical study. Thirty-eight patients had been evaluated through 8 weeks of follow up. Ninety-seven percent of those patients (37/38) had HCV RNA viral load measurements below the limit of quantification. For those patients through 12 weeks of follow-up, 100% remained below the limit of quantification (14/14). To date, RG-101 has been generally well tolerated with the majority of adverse events considered mild or moderate (headache and fatigue most commonly reported, each at approximately 11%), two SAEs reported during the follow-up period, and with no study discontinuations. The primary endpoint analysis (12 week follow up) for all 79 patients in the study are anticipated to be reported in second quarter of 2016. To expand the potential development of RG-101, in November 2015 we entered into a clinical trial collaboration and formulation agreement with GSK LLC. In the first quarter of 2016, we plan to initiate a Phase II study evaluating the potential to achieve sustained viral responses post treatment with a single subcutaneous administration of RG-101 in combination with daily oral administrations of GSK2878175, a non-nucleoside NS5B polymerase inhibitor, for up to 12 weeks in treatment-naïve patients chronically infected with HCV genotypes 1 and 3. Concurrently, GSK will work on developing a long-acting parenteral formulation for injection ("LAP") of GSK2878175 which could improve patient compliance through reduced dosing intervals and potentially extend opportunities for HCV therapeutic intervention.   This LAP formulation of GSK2878175 may be used in potential additional clinical trials together with RG-101 following completion of the planned Phase II study.  Neither we nor GSK has any further obligations or commitments beyond the contemplated study under the clinical trial collaboration agreement.

22.    The 2015 10-K contained certifications pursuant to SOX by Defendants Grint and Hagan, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23.    The statements referenced in ¶¶ 18-22 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) patients treated with RG-101 were at increased risk of contracting jaundice; (ii) consequently, the Company had overstated RG-101's approval prospects and/or commercial viability; and (iii) as a result of the foregoing, Regulus's public statements were materially false and misleading at all relevant times.

**The Truth Begins To Emerge**

24.    On April 15, 2016, Bloomberg reported that Regulus announced interim data from Phase 2 studies for RG-101 at the International Liver Congress 2016 in Barcelona, Spain.  According to the report, the presentation further addressed serious adverse effects for RG-101, such as "jaundice, fatigue, abdominal pain, nausea, follow-up indicated patient diabetes and alcohol consumption."

25.    On this news, Regulus' share price fell $0.90, or 11.07%, to close at $7.23 on April 15, 2016.

10

26.    On May 3, 2016, Regulus filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q").  For the quarter, Regulus reported a net loss of $21.21 million, or $0.40 per diluted share, on revenue of $490,000, compared to a net loss of $14.49 million, or $0.29 per diluted share, on revenue of $4.20 million for the same period in the prior year.

27.    In the Q1 2016 10-Q, the Company stated in pertinent part:

**Development Stage Pipeline**

…

RG-101: We are currently evaluating RG-101 in several Phase I/II studies.

In August 2015, we initiated a Phase II study investigating RG-101 designed to evaluate a shortened, four-week treatment regimen containing a subcutaneous administration of 2 mg/kg of RG-101 at Day 1 and Day 29, in combination with oral direct-acting antiviral agents Harvoni®, Olysio®, and Daklinza® for 28 days… To date, RG-101 has been generally well tolerated with the majority of adverse events considered mild or moderate, and with no study discontinuations. The primary endpoint analysis (12 week follow up) for all 79 patients in the study are anticipated to be reported in late Q2 2016.

28.    The Q1 2016 10-Q contained certifications pursuant to SOX by Defendants Grint and Hagan, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

11

29.    On June 7, 2016, Regulus issued a press release announcing top-line results from the primary endpoint analysis for ongoing Phase II studies of RG-101.   The press released stated in part:

> The results from this interim analysis demonstrate significant virologic response through 24 weeks of follow-up. RG-101 plus Harvoni continues to demonstrate 100% response rates. As we previously reported, the combination of RG-101 plus either Olysio or Daklinza monotherapies have seen small numbers of viral relapse. The results we report herein include four new relapses: two in the Olysio arm (weeks 20 and 32) and two in the Daklinza arm (weeks 12 and 24). RG-101 in combination with four weeks of oral DAA therapy has been generally well tolerated with the majority of adverse events considered mild or moderate, and with no study discontinuations. Commonly reported adverse events (AEs) included fatigue, headache, and injection site reactions.

30.    On June 27, 2016, post-market, Regulus announced that it had received verbal notice from the FDA that it had placed RG-101 on clinical hold after a second serious adverse event of jaundice was reported in a patient treated with the drug.

31.    As a result of this news, Regulus's share price fell $2.47, or more than 49%, to close at $2.54 on June 28, 2016.

32.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Post-Class Period Disclosures**

33.     On January 27, 2017, post-market, Regulus announced that the FDA would not reconsider the clinical hold on RG-101 until the agency had received the final safety and efficacy data from ongoing clinical and pre-clinical studies.  Regulus advised investors that the Company expected the requested data to be available in the fourth quarter of 2017.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Regulus securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Regulus securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and

other members of the Class may be identified from records maintained by Regulus or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Regulus;

- whether the Individual Defendants caused Regulus to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Regulus securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

40.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Regulus securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Regulus securities between the time the Defendants failed to disclose or

15

misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Against All Defendants For Violations of
<u>Section 10(b) And Rule 10b-5 Promulgated Thereunder)</u>**

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material

facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.   Such scheme was intended to, and, throughout the Class Period, did:   (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Regulus securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Regulus securities and options at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46.   Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Regulus securities.   Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Regulus's finances and business prospects.

47.   By virtue of their positions at Regulus, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein

17

and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Regulus, the Individual Defendants had knowledge of the details of Regulus's internal affairs.

49.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Regulus.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Regulus's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Regulus securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts

concerning Regulus's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Regulus securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

50.     During the Class Period, Regulus securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Regulus securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Regulus securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Regulus securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

19

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of Regulus, and conducted and participated, directly and indirectly, in the conduct of Regulus's business affairs.   Because of their senior positions, they knew the adverse non-public information about Regulus's misstatement of income and expenses and false financial statements.

55.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Regulus's financial condition and results of operations, and to correct promptly any public statements issued by Regulus which had become materially false or misleading.

56.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports,

press releases and public filings which Regulus disseminated in the marketplace during the Class Period concerning Regulus's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Regulus to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Regulus within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Regulus securities.

57.     Each of the Individual Defendants, therefore, acted as a controlling person of Regulus.   By reason of their senior management positions and/or being directors of Regulus, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Regulus to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of Regulus and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Regulus.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

21

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 31, 2017

Respectfully submitted,

**POMERANTZ LLP**
*By: /s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor

22

New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
   ahood@pomlaw.com
   hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*