UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE REGULUS THERAPEUTICS INC. SECURITIES LITIGATION | Case No.: 3:17-cv-182-BTM-RBB<br>Case No.: 3:17-cv-267-BTM-RBB<br><br>**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES**<br><br>**[ECF NOS. 46, 47]** |

The Court previously granted a motion for preliminary approval of the parties' Class Action Settlement in this matter on May 27, 2020. (ECF No. 43.) As directed by the Court's preliminary approval order, Plaintiffs filed their unopposed motion for final settlement approval and motion for attorneys' fees and costs. (ECF Nos. 46, 48.) The Court held a hearing on October 21, 2020. (ECF No. 52.)

Having considered the motion briefing, the terms of the Settlement Agreement, the lack of any objections, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motions for final approval and attorneys' fees and costs.

# I. BACKGROUND

**A. Procedural History**

Plaintiffs filed the putative class action complaint on December 21, 2017 against Defendants Regulus Therapeutics Inc., Paul C. Grint, M.D., Joseph P. Hagan, and Michael Huang, M.D., alleging Defendants made false and/or misleading statements about adverse events relating to Regulus's signature drug RG-101, a hepatitis C treatment, in violation of the Securities Exchange Act of 1934 ("Exchange Act"). (ECF No. 1.) RG-101 was intended to cut hepatitis C treatment time in half. Plaintiffs, however, allege that Defendants downplayed or ignored a series of preclinical and nonclinical data and serious adverse events indicating that RG-101 was prone to hepatoxicity (liver toxicity), which leads to jaundice.

On February 20, 2017, Plaintiff Ji Lin filed a separate suit asserting the same claims against Defendants. (Case No. 3:17-cv-267, ECF No. 1.) On October 26, 2017, the Court consolidated the two cases and appointed Levi & Korsinsky LLP as Lead Counsel and Mark Appel and Michael Spitters as Co-Lead Plaintiffs. (ECF No. 16.) Plaintiffs filed a consolidated complaint on December 12, 2017. (ECF No. 19.)

On February 6, 2018, Defendants moved to dismiss the consolidated complaint. (ECF No. 22.) The Court the Court granted Defendants' motion with leave to amend because Plaintiffs failed to allege a specific link between RG-101, liver toxicity, and the serious adverse events involving jaundice. (ECF No. 32.) Without this link, the Court could not determine the preclinical or nonclinical findings contradicted Defendants' public statements or made them false or misleading. (*Id.*)

On October 1, 2019, Plaintiffs filed an amended consolidated complaint. (ECF No. 33.) Before Defendants could answer or respond to the amended consolidated complaint, the parties reached a settlement. (ECF 38-2.) The Court

denied preliminary approval of the settlement because the release terms were unclear and the notice procedures were deficient. (ECF No. 39.)

On February 7, 2020, the parties submitted an amended settlement agreement ("Settlement Agreement"). (ECF No. 40.) The amended settlement agreement defined the "Settlement Class" as:

> all persons and entities that purchased or otherwise acquired shares of the publicly traded common stock of Regulus during the Class Period who allege to have been damaged thereby. Excluded from the Settlement Class are (i) Defendants; (ii) members of the immediate families of Defendants; (iii) any person who is or was an officer or director of Regulus during or after the Class Period; (iv) any entity in which any of the Defendants had or has a controlling interest; and (v) any legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any such excluded party in their capacity as such. Also excluded from the Settlement Class is any Person who validly requests exclusion pursuant to the requirements set forth in the Notice.

(ECF No. 40-2 ("Settlement Agreement"), 11:13–25 (¶ 1.34).) The Class Period "means the period between February 17, 2016 and June 11, 2017, inclusive." (*Id.* at 5:14–15 (¶ 1.4).)

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class and provisionally appointed Levi & Korsinsky LLP as class counsel and plaintiffs Mark Appel and Michael Spitters as class representative.

**B. Terms of the Settlement Agreement**

Under the terms of the Settlement Agreement, Defendants will pay $900,000 into a gross common settlement fund, without admitting liability. (*Id.* at 11:11–12 (¶ 1.33).) Of the $900,000, the Settlement Class will receive what remains after subtracting the cost of any attorneys' fees and expenses, notice and administration costs, and Lead Plaintiff's service awards, and applicable taxes (the "Net Settlement Fund"). (*Id.* at 7:17–20 (¶ 1.18).)

The Net Settlement Fund will be distributed among claimants on a pro rata basis based on the Plan of Allocation. (*Id.* ¶ 1.21.) "The Plan of Allocation generally measures the amount of loss that a Settlement Class member can claim

for purposes of making pro rata allocations of the Net Settlement Fund to Settlement Class members who submit valid Proof of Claim and Release forms (the "Authorized Claimants"). (ECF No. 46-5 ("Class Notice"), at 5 (§ 9).) For each share of Regulus common stock purchased or otherwise acquired during the Class Period, the amount of the claim will be:

| CLAIM AMOUNT | | SOLD | | | | |
|---|---|---|---|---|---|---|
| | | 2/17/2016 – 6/27/2016 | 6/28/2016 – 7/27/2016 | 7/28/2016 – 1/29/2017 | 1/30/2017 – 6/11/2017 | Sold on or retained beyond 6/12/2017 |
| PURCHASED | 2/17/2016 – 6/27/2016 | $0/share | $29.64 | $36.06 | $47.46 | $50.16 |
| | 6/28/2016 – 7/27/2016 | N/A | $0/share | $6.42 | $17.82 | $20.52 |
| | 7/28/2016 – 1/29/2017 | N/A | N/A | $0/share | $11.40 | $14.10 |
| | 1/30/2017 – 6/11/2017 | N/A | N/A | N/A | $0/share | $2.70 |

(*Id.* at 6.)

### 1. Attorneys' Fees and Costs

Under the Settlement Agreement, Plaintiff's counsel agreed to seek no more than 25 percent of the Settlement Amount, plus no more than $15,000 in litigation costs and expenses. (Settlement Agreement, 23:25–24:10 (¶ 6.1); Class Notice, at 9 (§ 18).)

### 2. Remainder

Any balance remaining in the Settlement Fund six months after the initial distribution shall be redistributed to Authorized Claimants who have cashed their initial distributions, after payment of any unpaid costs or fees incurred in administering the Settlement Fund for such redistribution if Lead Counsel, in consultation with the Claims Administrator, determines that additional redistributions, after deduction of any additional fees and expenses that would be

incurred with respect to such redistribution, would be cost-effective. (Settlement Agreement, 22:10–20 (¶ 5.5).)

#### 4. Class Member Release

In exchange for the settlement awards, class members will release defendant claims arising from the operative complaint. (*Id.* at 8:24–9:13 (¶ 1.25), 19:14–21 (¶ 4.2).)

## C. Class Notice and Claims Administration

Pursuant to the Settlement Agreement, the Court appointed Analytics Consulting LLC to administer the fund and to contact the class members in the manner set forth in the Preliminary Approval Order. (ECF No. 43, 5 (¶ 10).)

## II. FINAL APPROVAL OF SETTLEMENT

## A. Legal Standard

A court may approve a proposed class action settlement of a class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

**B. Analysis**

***1. The Settlement Class Meets the Prerequisites for Certification***

The Court concluded that these requirements were satisfied when it granted preliminary approval of the class action settlement. (*See* ECF No. 43.) The Court is not aware of any new facts which would alter that conclusion. However, the Court reviews the Rule 23 requirements again briefly, as follows.

Although the precise number of Settlement Class Members is unknown, there were approximately 5.15 million shares damaged by the alleged fraud, making it so numerous that joinder of all members is impracticable. Rule 23(a)(1) is therefore satisfied.

Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though all questions of fact and law need not be in common. *Hanlon*, 150 F.3d at 1026. The focus of this action is common to all class members, namely whether Defendants misrepresented material facts or omitted material facts concerning Regulus in violation of the law and whether these alleged actions artificially inflated Regulus's stock price. Rule 23(a)(2) is therefore satisfied.

Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Lead Plaintiff's claims are typical of those of the class, as they advance the same claims, share identical legal theories, and allegedly experienced the same losses from Regulus's alleged misrepresentations. Rule 23(a)(3) is therefore satisfied.

With respect to Rule 23(a)(4), the Court finds the representative parties and

class counsel have fairly and adequately represented the interests of the Class. No conflicts of interest appear as between Lead Plaintiff and the members of the Settlement Class. Class Counsel have demonstrated that they are skilled in this area of the law and therefore adequate to represent the Settlement Class as well. Rule 23(a)(4) is therefore satisfied.

The Settlement Class further satisfies Rule 23(b)(3) in that common issues predominate and "a class action is superior to other available methods for fairly and efficiently adjudicating" the claims here.

With respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). The common questions in this case which would be subject to common proof include whether Defendants misrepresented material facts or omitted material facts for concerning Regulus in violation of the law, whether Defendants had a duty to disclose alleged material omissions or acted with scienter, and whether the market price of Regulus's common stock during the class period was artificially inflated due to the alleged material omissions and/or misrepresentations. These questions predominate. Moreover, given this commonality, and the number of potential class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue.

Accordingly, the Court concludes that the requirements of Rule 23 are met and that certification of the class for settlement purposes is appropriate. Plaintiff Michael Spitters is hereby appointed as class representative and Levi & Korsinsky LLP is appointed class counsel.

### 2. The Settlement is Fundamentally Fair, Adequate, and Reasonable

**A. Adequacy of Notice**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e). *Hanlon,* 150 F.3d at 1025. For the Court to approve a settlement, "[t]he

class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court previously approved the parties' proposed notice procedures. (ECF No. 43.) In the motion for final approval, Plaintiffs state that they followed this approved notice plan. (ECF No. 46-1, 19:14–21.) The Claims Administrator disseminated approximately 15,703 Notice Packets to potential Class members and nominees. (ECF 46-4, ¶ 9.) In addition, the Claims Administrator published the Summary Notice in *Investor's Business Daily*, a national business newswire on June 15, 2020, and maintained a website to field Regulus shareholder questions. (*Id.* ¶¶ 10–11.) To-date, one class member requested exclusion and none have objected to the Settlement. (*Id.* ¶¶ 13–14.) The notice informed the class members of all key aspects of the Settlement, hearings, and the process for objections. (*See* Class Notice.)

In light of these actions and the Court's prior order granting preliminary approval, the Court finds that the parties have provided sufficient notice to the class members.

### B. Rule 23(e)/*Hanlon* Factors

Turning to the Rule 23(e) factors, the Court first considers whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B). These considerations overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings. *See Hanlon,* 150 F.3d at 1026.

As discussed above when certifying the class, the Court finds that both Lead Plaintiff and Class Counsel have adequately represented the class. In its Preliminary Approval Order, the Court found no evidence of a conflict between

class representatives or counsel and the rest of the class. (ECF No. 43 3–4 (¶ 5).) No contrary evidence has emerged. Similarly, the Court finds that counsel has vigorously prosecuted this action through its pre-filing investigation, expert damages analysis, dispositive motion practice, and settlement negotiations. (ECF No. 46-1, 7:12–8:15.) Counsel possessed sufficient information to make an informed decision about the settlement, and its preliminary approval motion included information regarding settlement outcomes of similar cases, further indicating that counsel had adequate information from which to negotiate the settlement. *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

The Settlement was also the product of arm's length negotiations through back-and-forth communications and bargaining of terms. (ECF No. 46-1, 8:18–26; ECF 43, at 4 (¶ 6).). There is no evidence that the parties colluded here. Counsel's fee request is proportionate to the settlement fund, and no funds revert to Defendants. (*See generally* Settlement Agreement.) Further, the Court finds that the requested fees are in fact reasonable, and will be discussed in greater detail below. This factor weighs in favor of approval.

### *i. Strength of Plaintiffs' Case and Risk of Continuing Litigation*

In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. The inherent risk of further litigation in this matter is known to all involved with the case. Proceeding with this case presents very real risks regarding additional pleading challenges, class certification, summary judgment, *Daubert* and *in limine* motions, proving the necessary falsity, scienter, reliance and damages if the case proceeded to trial, and a possible unfavorable decision on the merits. *See Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *6 (C.D. Cal. July 21, 2008) ("Because both parties

face extended, expensive future litigation, and because both faced the very real possibility that they would not prevail, this factor supports approval of the settlement."). While Plaintiff believes in the merits of his case, Defendants have strong defenses to falsity, scienter, reliance and damages determinations, and there is no guarantee that Plaintiff will prevail. The Court finds these risks weigh in favor of settlement.

### ii. Effectiveness of Distribution Method, Terms of Attorney's Fees, and Supplemental Agreements

"Approval of a plan of allocation of settlement proceeds in a class action under FRCP 23 is governed by the same standards of review applicable to approval of settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994) (citing *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)). *See also In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005 WL 1594403 at 11 (C.D. Cal. 2005). The allocation formula used in a plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (citation omitted). A plan which "fairly treats class members by awarding a pro rata share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue" should be approved as fair and reasonable. *In re MicroStrategy, Inc., Sec, Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) (citation omitted).

Here, as discussed, the Plan of Allocation treats all class members with similar losses, based on the date of the purchase and sale, in the same way by awarding pro rata shares. This factor weighs in favor of approval.

### iii. Equitable Treatment of Class Members

Rule 23 also requires consideration of whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)(i). Consistent with this instruction, the Court considers whether the proposal "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted). Under the Settlement Agreement, class members who have submitted timely claims will receive payments on a *pro rata* basis based on the number of Regulus common stock shares purchased or otherwise acquired during the Class Period. (Class Notice, at 5–6 (§ 9); Settlement Agreement, 6–8 (¶¶ 11–17.)

The Court finds that the allocation plan is equitable. Moreover, the service award Lead Plaintiff seeks is reasonable and does not constitute inequitable treatment of class members. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). This factor weighs in favor of approval.

### *iv. Settlement Amount*

"The relief that the settlement is expected to provide to class members is a central concern," though it is not enumerated among the factors of Rule 23(e). *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Thus, the Court considers "the amount offered in the settlement." *Hanlon,* 150 F.3d at 1026. Crucial to the determination of adequacy is the ratio of "plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware,* 484 F. Supp. 2d at 1080. However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

Here, the $900,000 fund represents a respectable recovery for the class. Experts have calculated that the maximum potential damages in this action at $45,150,000. (ECF No. 46-1, 14:17–20.) The gross settlement amount thus represents a recovery of 1.99% of total estimated damages. (*Id.*, 14:20–25.) Other

courts have found similar recoveries to be fair and reasonable. (ECF 38-3, 2–3 (¶ 5); *see Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (approving settlement representing 3.8% of plaintiffs' estimated damages); *In re Prudential Sec., Inc. L.P. Litig.*, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages). The Court has already dismissed the complaint and the amended complaint may fare no better. Something is clearly better than nothing. Accordingly, the settlement amount also weighs in favor of approval.

### *v. Counsel's Experience*

The Court also considers "the experience and views of counsel." *Hanlon*, 150 F. 3d at 1026. Levi & Korsinsky LLP has extensive experience representing plaintiffs in securities and financial class action lawsuits. (ECF No. 46-2, 4 (¶ 5); *see generally* ECF No. 46-3. (firm resume).) That such experienced counsel advocate in favor of the settlement weighs in favor of approval.

### *vi. Objections*

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted). Here, Class Counsel and the Court received no objections. (ECF No. 46-4, ¶ 13.)

Many potential class members are sophisticated institutional investors; the lack of objections from such institutions indicates that the settlement is fair and reasonable. *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004). Likewise, there was only one request for exclusion. (*Id.* ¶ 14.). The positive response from the class confirms that the settlement is fair and reasonable.

Balancing the relevant factors, the Court finds the settlement fair and reasonable under Rule 23(e) and *Hanlon*.

### *vii. Other Findings*

**Notice to Government Agencies:** The parties provided the required notice to federal and state attorneys general under the Class Action Fairness Act, 28 U.S.C. § 1715(b).  (ECF No. 53, 1:8–13 (¶ 2).)  Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

### *viii. Certification Is Granted and the Settlement Is Approved*

For the foregoing reasons, and after considering the record as a whole, the Court finds that notice of the proposed settlement was adequate, the settlement was not the result of collusion, and the settlement is fair, adequate, and reasonable. Lead Plaintiff's Motion for Final Approval of the Settlement is GRANTED.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.  "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees.  *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class.  *Id.* Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure."  *Id* (internal quotation marks omitted).  However, "[t]he benchmark percentage should be adjusted, or replaced

by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL

954516, at *6 (N.D. Cal. Mar. 6, 2014)(internal quotation marks and citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

**2. Discussion**

Plaintiffs seek an award of attorneys' fees totaling $225,000, which represents 25% of the $900,000 gross Settlement Fund, as well as litigation expenses and costs in the amount of $10,993.45. (ECF No. 47-1.)

Addressing expenses first, the Court does not hesitate to approve an award in the requested amount of $10,993.45. Class Counsel have submitted an itemized list of expenses by category of expense incurred through October 21, 2020, totaling $12,993.45, excluding Settlement Administration fees. (*See* ECF No. 46-2, 5:1–13 (¶ 15). At the fairness hearing, Plaintiff's counsel agreed to exclude $2,000 in anticipated travel and lodging expenses, because the hearing was held telephonically, resulting in $10,993.45 of total expenses. The Court has reviewed the list and finds the expenses to be reasonable.

The Court likewise is satisfied that the request for attorneys' fees is reasonable. Using the percentage-of-recovery method, the Court starts at the 25% benchmark. *See In re Bluetooth*, 654 F.3d at 942. Plaintiffs requests 25%, given the results achieved, the risks of the litigation, the efficiency of Class Counsel's work, and the contingent nature of the fee. (ECF No. 47-1. 3:17–11:20.) Courts have awarded comparable percentages in similar cases. *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *23 (N.D. Cal. Feb. 11, 2016) (25%); *Omnivision*, 559 F. Supp. 2d at 1049 (28%).

Through August 2020, Levi & Korsinsky expended 374.70 hours litigating this action. (ECF No. 46-2, 3:13–4:7 (¶¶ 9–10).). A lodestar cross-check confirms

the reasonableness of the requested fees, which amounts to a 0.94 multiplier of the lodestar in the amount of $238,300.50. *Id.* Courts have found that "[m]ultipliers of 1 to 4 are commonly found to be appropriate in common fund cases." *Aboudi v. T-Mobile USA, Inc.*, No. 12-CV-2169-BTM, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015); *see also Petersen v. CJ Am., Inc.*, No. 14-CV-2570-DMS, 2016 WL 5719823, at *1 (S.D. Cal. Sept. 30, 2016) (awarding 1.12 multiplier and recognizing that "the majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar"). Thus, a multiplier less than 1.0 is below the range typically awarded by courts and is presumptively reasonable.

Lead Plaintiff's motion for attorneys' fees and expenses is GRANTED. Lead Counsel is awarded $10,993.45 in expenses and $225,000.00 in attorneys' fees.

**B. Incentive Award**

Lead Plaintiff Michael Spitters requests $2,000 reimbursement of costs and expenses incurred litigating this action. (ECF No. 46-8; ECF No. 47-1, 13:4–26.) The Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(4), limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (internal citation omitted).

"Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). Service awards as high as $5,000 are presumptively reasonable in this judicial district. *See, e.g.*, *Lloyd v.*

*Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2019 WL 2269958, at *15 (S.D. Cal. May 28, 2019). Lead Plaintiff expended approximately 15 hours supervising and participating in the litigation and his requested award is directly tied to his normal hourly rate. (ECF No. 46-8, 2:9–15.) Given the amount of time and assistance Lead Plaintiff put into the case and the success of the recovery, an incentive award in the amount of $2,000 is proportional to the class members' recoveries. *See Hayes v. MagnaChip Semiconductor Corp.*, No.14-cv-01160-JST, 2016 WL 6902856 at *10 (N.D. Cal. Nov. 21, 2016) (noting that $5,000 incentive awards are presumptively reasonable in the 9th Circuit); *In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM, 2014 WL 10212865, at *34 (C.D. Cal. July 28, 2014) (awarding an incentive award of $6,600 in a securities class action).

The Court concludes that the requested $2,000.00 incentive award is appropriate in this case.

## IV. CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is awarded $225,000.00 in attorneys' fees and $10,993.45 in litigation costs. Lead Plaintiff Michael Spitters is granted an enhancement award of $2,000.00.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

//
//
//
//
//
//

The parties shall file a post-distribution accounting no later than **April 19, 2021**.  The Court **SETS** a compliance hearing on **April 26, 2021** on the Court's 2:00 p.m. calendar.  The parties shall submit a proposed judgment to the Court by November 13, 2020.

**IT IS SO ORDERED.**

Dated:  October 29, 2020

_____
Honorable Barry Ted Moskowitz
United States District Judge